AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified. WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   MJ20-796 |
| Eleven (11) Cellular Telephone and Three (3) Electronic Devices, more fully described in Attachment A | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Eleven(11) Cellular Telephone and Three(3) Electronic Devices, as more fully described in Attachment A

located in the          Western          District of          Washington          , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| See Attachment C | |

The application is based on these facts:

✓   See Affidavit of FBI Task Force Officer Edward Chan, continued on the attached sheet.

☑   Delayed notice of   90   days (give exact ending date if more than 30 days:   03/10/2021   is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Edward Chan, FBI Task Force Officer
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:          12/10/2020

*Judge's signature*

City and state:  Seattle, Washington          Brian A. Tsuchida, United States Chief Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF EDWARD CHAN

STATE OF WASHINGTON )
)      ss
COUNTY OF KING )

I, Edward Chan, being first duly sworn on oath, depose and say:

## I.    INTRODUCTION

1.      This is the re-submission of an application for search warrants originally presented on July 1, 2020, before Chief Magistrate Judge Brian A. Tsuchida, in case number MJ20-395.  Due to delays at the Seattle FBI Computer Analysis Response Team (CART), the electronic devices that are the subject of this Application have not yet been forensically examined. Although the government believes the initial search warrant continues to authorize the copying and analysis of the electronic devices listed in this warrant, the government is seeking this renewal out of an abundance of caution, and given the delays. In order to conduct a more timely examination after this search warrant is authorized by the Court, the FBI will send the devices to the FBI's Northwest Regional Computer Forensics Laboratory (NW RCFL) for examination. The NW RCFL has accepted the case, has assigned an examiner, and is ready to receive the evidence.

2.      I submit this affidavit in support of an application for warrants authorizing the search and examination of fourteen (14) electronic devices (consisting of eleven (11) cell phones, two (2) laptop computers, and one (1) USB drive), currently in evidence at the Federal Bureau of Investigation (FBI) Evidence Control Center (ECC).  The Seattle ECC is located at 1111 Third Avenue, Seattle Washington. These electronic devices are further described in paragraph 3 below, and in Attachment A (attached hereto and incorporated by reference as if fully set forth herein). I am seeking authorization to search for evidence, fruits and instrumentalities of the crimes of *Conspiracy to Distribute Controlled Substances and Possession with Intent to Distribute Controlled Substances*, in violation of 21 U.S.C. § 841(a)(1) and 846; *Use of a Communications Facility in Furtherance of a Felony Drug Offense*, in violation of 21 U.S.C. § 843(b); *Money*

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 1
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   *Laundering*, in violation of 18 U.S.C. 1956; *Possession of a Firearm in Furtherance of*

2   *Drug Trafficking Offenses*, in violation of 18 U.S.C. § 924(c); and *Unlawful Possession*

3   *of Firearms,* in violation of 18 U.S.C. § 922.

4        3.     The targets of this investigation are Carlos Carrillo Lopez, Humberto Lopez

5   Rodriguez, and those who have conspired with them and aided and abetted them in the

6   above offenses. The grand jury returned an eight-count indictment against Carrillo Lopez

7   and Lopez Rodrguez on August 5, 2020, charging them with the following crimes:

8   *Conspiracy to Distribute Controlled Substances* (heroin, methamphetamine, fentanyl, and

9   cocaine), in violation of 21 U.S.C. § 841(a)(1) and 846; *Possession of Controlled*

10   *Substances with Intent to Distribute,* in violation of 21 U.S.C. § 841(a)(1), *Possession of*

11   *Firearms in Furtherance of Drug Trafficking Offenses*, in violation of 18 U.S.C. § 924(c),

12   *Unlawful Possession of Firearms, and Alien in Possession of Firearms*, in violation of 18

13   U.S.C. § 922(g)(1)&(9). Both defendants are pending trial before The Honorable John C.

14   Coughenour, with a trial date of March 29, 2021 (Case Number CR20-107 JCC).

15        4.     The electronic devices for which I am seeking warrants to search were

16   seized pursuant to federal search warrants issued on January 14, 2020, and served on

17   January 16, 2020 at the following locations: 3221 Meadow Avenue North, Renton,

18   Washington (the location where Carlos Carrillo Lopez was arrested), and 111 Southwest

19   305th Street, Federal Way (the location where Humberto Lopez Rodriguez was arrested).

20   The items are in sealed evidence bags and are described as follows, and labeled with the

21   following FBI Evidence numbers:

22        **Items Recovered From 3221 Meadow Avenue North, Renton**

23        a.  **An AT&T ZTE cell phone**, serial number 329F7622A6E4,  recovered

24            from a nightstand. (Evidence number 1B162)

25        b.  **A Blue Samsung Galaxy S7 cell phone**, serial number

26            RF8HB0PLXOV, recovered from a nightstand (Evidence number

27            1B174).

28

Affidavit of FBI Task Force Officer Edward Chan - 2
USAO #2019R01215

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

    c.  **An AT&T LG Smartphone Model LM-X210APM, serial number 904VTNV064215,** recovered from a chair (Evidence number 1B163)

    d.  **An LG phone Model LG-H932 V30** (no serial number noted), recovered from the floor under the north window (Evidence number 1B164)

**<u>Items Recovered From 111 Southwest 305th Street, Federal Way</u>**

    e.  **One pink Samsung cell phone** (evidence item 1B62), recovered from the bed in the northeast bedroom;

    f.  **One black LG cell phone** (evidence item 1B63), recovered from the bed in in the northeast bedroom;

    g.  **One black Alcatel cell phone** (evidence item 1B80), recovered from the closet in in the northeast bedroom;

    h.  **One black Alcatel cell phone** with visible home button (evidence item 1B81), recovered from the closet in in the northeast bedroom;

    i.  **One blue cell phone** IMEI 35748090188600 (evidence item 1B82), recovered from the closet in in the northeast bedroom;

    j.  **One black Alcatel cell phone** (evidence item 1B110), recovered from dresser 1 in the northeast bedroom;

    k.  **One black Alcatel cell phone** with a cracked screen (evidence item 1B123), recovered from dresser 2 in the northeast bedroom;

    l.  **One HP laptop computer,** serial number 8CG9145PBJ (evidence item 1B114), recovered from dresser 1 in the northeast bedroom;

    m.  **One HP laptop computer**, serial number 5CB3524GY3 (evidence item 1B118), recovered from dresser 1 in the northeast bedroom, believed to be Lopez Rodriguez's bedroom.

    n.  **One USB drive** (evidence item 1B45), recovered from a key ring in the northeast bedroom.

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 3
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.      Based upon my training and experience and discussions with other investigators, I know that the above electronic devices have been stored at the FBI evidence room in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when these electronic devices first came into the possession of the FBI on January 16, 2020.

## II.      AGENT BACKGROUND

6.      I have worked for the Seattle Police Department for 25 years and have been assigned as a Task Force Officer (TFO) with the Federal Bureau of Investigations (FBI) Seattle Safe Streets Task Force (SSSTF) for ten years. I attended the Washington State Criminal Justice Commission Basic Law Enforcement Training Academy, graduating in 1994. I have completed a 40-hour block of instruction in Basic Seattle Police Detective Training, an 80-hour Undercover Police Officer course given by the Washington State Criminal Justice Commission, a 24-hour course in Drug Trafficking Interdiction, Intercepting Secure Communications (Title III / Wires) as well as training in Drug Traffic Organizations (DTOs) and Mexican Cartels.

7.      I have been involved in over 2,000 narcotics arrests as either the primary or assisting officer. I have also authored affidavits in support of federal and state warrant applications, participated in executing those warrants, and interviewed numerous drug traffickers and informants with deep knowledge of drug trafficking. I have also served as a case agent on federal Title III wiretap investigations into Drug Trafficking Organizations (DTOs).

8.      Because of this experience and training, I am familiar with common methods of investigating drug trafficking and manufacturing organizations, and I have become familiar with the methods of operation of drug traffickers and manufacturers, including, but not limited to: their methods of importing, exporting, storing, concealing, and packaging drugs; their methods of transferring and distributing drugs, their use of cellular telephones and electronic devices; their use of numerical codes, code words, and counter surveillance; and other methods of avoiding detection of law enforcement. I am

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 4
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  also familiar with the various methods of packaging, delivering, transferring, and

2  laundering drug proceeds.

3       9.      The facts in this affidavit derive from my personal participation in this

4  investigation, from verbal and written reports of other law enforcement officers

5  participating in this and related investigations, from records, documents and other

6  evidence obtained during this investigation, and from my training and experience. I have

7  not included every fact known concerning this investigation. I have set forth only the

8  facts that I believe are essential to establish the necessary foundation for an order

9  authorizing the Search Warrants requested below.

10       **III.    SUMMARY OF INVESTIGATION AND PROBABLE CAUSE**

11       **A.    Summary of this Conspiracy and the Charges**

12       10.     On January 14, 2020, the Honorable Brian Tsuchida signed search warrants

13  authorizing searches of the below locations. The FBI executed the warrants on January

14  16, 2020, and I personally participated in their execution. The following locations were

15  searched:

16       •     3221 Meadow Avenue North, Renton, Washington (hereafter "the Renton

17             house");

18       •     111 Southwest 305th Street, Federal Way, Washington (hereafter "the

19             Federal Way house");

20       •     A maroon 2018 Toyota Camry, Washington license BRX4533 (hereafter

21             "maroon Camry" or Target Vehicle 1);

22       •     A blue 2016 Ford Explorer, Washington license BLT5089 (hereafter "blue

23             Explorer," or Target Vehicle 2); and

24       •     The person of Carlos Carrillo Lopez

25       **1.    Electronic devices found in, and search of, the Renton house.**

26       11.     Investigators searched the Renton house and determined that Carrillo Lopez

27  occupied the northwest bedroom in that house. When the SWAT team made entry, agents

28  encountered Carrillo Lopez exiting the northwest bedroom (the search took place at

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 5
USAO #2019R01215

approximately 0600). As further evidence that Carrillo Lopez occupied this bedroom, Carillo Lopez asked law enforcement to procure his black sweatpants which were located on the floor of this bedroom. There were no other occupants in this bedroom at the time of the search, and no evidence (such as clothing or personal effects) suggesting that anyone other than Carrillo Lopez had occupied or recently used this bedroom.

12.     Searching officers located the following drugs and guns from the northwest bedroom of the Renton house: several packages of suspected cocaine, totaling 71.9 grams, which had been secreted in various locations in the bedroom; one bullet-proof/ballistic vest from the closet; one Smith and Wesson MP40 semi-automatic pistol, under a corner of the mattress of the only bed in this bedroom; one Wilson Combat AR semi-automatic rifle, under the bed, next to a box from which investigators recovered 498.7 grams of suspected methamphetamine.  Investigators conducted a field test of the white crystalline substance seized from this box and confirmed it tested positive for methamphetamine.

13.     The only other people in the Renton house were identified as Carrillo-Lopez's father, and Carrillo Lopez's three minor siblings (between the approximate ages of three and sixteen). Investigators found electronic devices in other bedrooms of this house, but I am not requesting authorization to search these devices, because none of the other people in the Renton house are considered suspects or considered to be involved in this conspiracy.

14.     Agents recovered the following four cell phones from the northwest bedroom of the Renton house (Carrillo Lopez's bedroom). After seizing these items, the FBI placed them in sealed evidence bags and assigned the following evidence numbers to the items:

- **An AT&T ZTE cell phone**, serial number 329F7622A6E4,  recovered from a nightstand. (Evidence number 1B162)

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 6
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- **A Blue Samsung Galaxy S7 cell phone**, serial number RF8HB0PLXOV, recovered from a nightstand (Evidence number 1B174).

- **An AT&T LG Smartphone Model LM-X210APM, serial number 904VTNV064215,** recovered from a chair (Evidence number 1B163)

- **An LG phone Model LG-H932 V30** (no serial number noted), recovered from the floor under the north window (Evidence number 1B164)

While I was present at the Renton house on the morning of the search, I called Target Telephone 1, which was the phone used by Carrillo Lopez during the controlled buys conducted in this case (summarized below).  One of the above four telephones rang when I called TT 1, but I was unable at the time to determine which of the four phones was ringing. Thus, I can attest that TT1 was in Carrillo Lopez's bedroom on January 16, 2020, and is one of the above four phones, but I cannot say which one.

**2.    Electronic devices found in, and search of, the Federal Way house.**

15.    The search team entered the Federal Way house at approximately 0600 on January 16, 2020. Humberto Lopez Rodriguez was the only occupant of the house at the time of the search. He was in the northeast bedroom at the time of the search (there are four bedrooms in this house). Investigators found identification belonging to Lopez Rodriguez in this room, and the bed appeared recently used (the top bedsheets were pulled down, unlike the one other bed in the house). While the search was being executed, Lopez Rodriguez's girlfriend arrived at the home (she identified herself as his girlfriend). She was questioned by law enforcement, and advised that Lopez Rodriguez was the sole occupant of the residence, although she also occasionally stayed overnight on weekends with their daughter. She confirmed that the northeast bedroom in which officers encountered Lopez Rodriguez was his bedroom. All ten electronic devices I am seeking to search from the Federal Way house came from this bedroom.

Affidavit of FBI Task Force Officer Edward Chan - 7
USAO #2019R01215

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

16.     Lopez Rodriguez appeared to be the primary occupant of the Federal Way house. In addition to the above information, I reached this conclusion based on the fact that this was a four bedroom house, and the northeast bedroom in which Lopez Rodriguez was staying, was the only bedroom that had clothing, personal effects, or appeared to be recently used as overnight accommodation. Of the other three bedrooms, one had children's toys in it, and some trash, but had no bed, mattress, or any other item suggesting it was used as a bedroom; the third bedroom had a bed but did not appear to be used regularly as it had clothing tossed on top of the bed; the final (fourth) bedroom appeared to be an office space used by Lopez Rodriguez for his business. This room contained documents, inventory, and equipment (including a commercial quality printer) belonging to Lopez Rodriguez's business, "Hat Flags." A public records search of Washington State business licenses shows that "Hat Flags" was registered in Washington on July 25, 2019. The only "governing person" listed with the state of Washington is Humberto Lopez Rodriguez. Washington State also lists both a mailing address and a "location address" as 3221 Meadow Avenue North, Renton (the Renton house).

17.     Investigators believe the Federal Way house was a "stash house" for this conspiracy. This is based on the fact that investigators found drugs and guns hidden throughout the house, and that Carrillo Lopez traveled to this house before certain drug deals, as specified below. Investigators recovered over ten pounds of suspected methamphetamine secreted in various locations in the Federal Way house, including the laundry room, the living room, and from an outbuilding. Investigators also recovered more than seven individually wrapped kilograms of suspected heroin from the laundry room. Investigators also located two more bags of a brown substance that appears to be suspected heroin. Investigators conducted field tests of the suspected methamphetmine seized from this house and confirmed it tested positive for methamphetamine. Investigators conducted a field test of the brown sticky substance seized from the laundry room and confirmed that it tested positive for heroin. Investigators also recovered two

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 8
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

separate caches of pills that are believed to be fentanyl, that await further testing to confirm their substance.

18.     Investigators also recovered two pieces of body armor from the Federal Way house –each one from a different hallway closet. In addition, investigators found six loaded firearms in the bedroom used by Lopez Rodriguez, and found eleven loaded firearms in total from the house and two vehicles in the driveway (these eleven include the six from his bedroom). Investigators also found hundreds of rounds of ammunitions and extra magazines and drums for the firearms. The eleven loaded firearms were: three (3) Sig Sauer semi-automatic pistols; (1) Smith and Wesson semi-automatic pistol; two (2) Beretta semi-automatic pistols; one (1) Colt semi-automatic pistol; three (3) Smith and Wesson M&P semi-automatic rifles; and one (1) gold-colored semi-automatic pistol.

19.     Investigators recovered the following ten (10) electronic devices from the Federal Way house; all of these items were seized from the northeast bedroom occupied by Lopez Rodriguez. After seizing these items, the FBI assigned the following evidence numbers to the items:

- **One pink Samsung cell phone** (evidence item 1B62), recovered from on top of the bed;

- **One black LG cell phone** (evidence item 1B63), recovered from the bed;

- **One black Alcatel cell phone** (evidence item 1B80), recovered from the closet;

- **One black Alcatel cell phone** with visible home button (evidence item 1B81), recovered from the closet;

- **One blue cell phone** IMEI 35748090188600 (evidence item 1B82), recovered from the closet;

- **One black Alcatel cell phone** (evidence item 1B110), recovered from dresser 1;

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 9
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- **One HP laptop computer,** serial number 8CG9145PBJ (evidence item 1B114), recovered from dresser 1;
- **One HP laptop computer**, serial number 5CB3524GY3 (evidence item 1B118), recovered from dresser 1;
- **One black Alcatel cell phone** with a cracked screen (evidence item 1B123), recovered from dresser 2;
- **One USB drive** (evidence item 1B45), recovered from a key chain.

### B.  Background of this Investigation (October 2019-January 2020)

20.      In October 2019, I met with a Cooperating Human Source (hereafter, "CHS") who provided information on a Hispanic male in his twenties that the CHS knew to go by the name, "Los."[1] The CHS reported that Los was trafficking large amounts of heroin, cocaine, and methamphetamine in Western Washington. The CHS stated he/she previously met Los in Renton and Los showed the CHS over one kilogram of cocaine and a similar amount of heroin in a bag in his (Los's) vehicle. The CHS had multiple prior meetings with Los. The CHS said Los drove several vehicles, including a newer blue Ford Explorer.

21.      The CHS is working for the Seattle Police Department Narcotics Section. The CHS is cooperating with the police as a paid informant. This informant is familiar with controlled substances through over ten (10) years of association with persons who use/sell drugs. The CHS has proven reliable in the following manner; by furnishing names, addresses, and detailed information of people who are currently trafficking in controlled substances. The CHS has provided information leading to arrests and search warrants in other investigations. I have been able to verify this information by reviewing official police files or from my own personal knowledge. The CHS has been told that providing false or misleading information will result in termination of our agreement.

---

[1]  "Los" was later determined to be Carlos Carrillo Lopez, as explained below.

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 10
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   The CHS lives in the community and therefore wishes to remain anonymous for fear of

2   retaliation.

3       22.     The CHS has multiple (nineteen) felony and misdemeanor convictions in

4   Washington State, dating from about the mid-1990s through about 2014. Nine of these

5   convictions are felonies, including convictions for robbery in the second degree,

6   attempted robbery in the second degree, escape, unlawful possession of a firearm (twice),

7   and others. The CHS does not have any convictions for crimes of deceit to the court, but

8   does have a conviction for giving a false statement (false name) to police.[2]

9                   **Standard Controlled Purchase Procedure**

10      23.     During a controlled purchase, the CHS is first searched for money,

11  narcotics, and narcotics paraphernalia. After being found free of these items, the CHS is

12  sent to the target location to obtain the narcotics. The CHS is kept under constant

13  observation to and from the target location. The CHS is not to contact anyone while

14  approaching or returning from the location. After obtaining the delivery from the target

15  location, the CHS returns directly to the investigator officer and releases the delivered

16  controlled substance. The CHS is again searched for money, narcotics, and narcotics

17  paraphernalia.  The CHS is debriefed and a field test is conducted on the controlled

18  substance(s).

19

20

21  _____

22  [2]  In late February 2020, CHS was convicted for misdemeanor forgery and misdemeanor attempted possession with
    intent to distribute a controlled substance (arising from the same incident of submitting a forged prescription). CS2
23  has not yet been sentenced for this conviction. Investigators first learned of these convictions in early June 2020
    when investigators conducted an updated check of CHS's criminal history. When CHS was opened by SPD in fall of
24  2019 and re-opened by FBI Seattle in January 2020, CHS's criminal history was checked, but CHS had not yet been
    convicted of this misdemeanor forgery and attempted drug possession charge. Investigators did not ask CHS about
25  any pending criminal cases at the time of opening/re-opening, and therefore CHS did not offer information about
    CHS's pending criminal case for which CHS had legal representation. Accordingly, these misdemeanor convictions
26  were not included in the prior applications for a phone/GPS tracking warrant and pen register/trap and trace order
    related to this investigation, nor for the January 2020 search warrants described above. This was not an intentional
27  omission. CHS did not provide false or misleading information to investigators about the misdemeanor forgery and
    attempted drug possession charge (because he was not asked about them). Investigators have found the information
28  provided by CHS in this investigation and other investigations to be reliable and corroborated by traditional
    investigative techniques and/or other independent source reporting.

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 11                    UNITED STATES ATTORNEY
USAO #2019R01215                                                        700 STEWART STREET, SUITE 5220
                                                                       SEATTLE, WASHINGTON 98101
                                                                       (206) 553-7970

1

2

**Controlled Buy #1**
**Use of Maroon Camry**

3      24.      In early November 2019, I met with the CHS in order to make a controlled

4   narcotics purchase per the above-described procedure. I directed the CHS to contact Los

5   at a phone number, (425) 312-2258, the CHS had previously provided to me for Los. The

6   CHS called Los to arrange a purchase of a quantity of heroin from Los, while

7   investigators listened to the conversation. During the call, Los agreed to sell heroin to the

8   CHS and told the CHS to meet at a specific location in Federal Way. The call ended.

9      25.      As described above, investigators searched the CHS and the CHS's vehicle.

10   Both were found to be free of any money, contraband or narcotics. Investigators gave the

11   CHS a quantity of pre-recorded buy money and instructed the CHS to drive directly to

12   the meet location without contacting anyone else. The CHS was directed to use the

13   money to purchase the heroin from Los.

14      26.      Investigators followed the CHS to the meet location. The CHS parked

15   his/her vehicle and waited in it with no contact from anyone else. Approximately ten

16   minutes later, investigators saw Target Vehicle 1 (the maroon Camry) park near the CHS.

17   A male, later identified by the CHS as Los, got out of the driver's seat and got into the

18   passenger seat of the CHS's vehicle. Los was the only person in Target Vehicle 1.  Los

19   got out of the CHS's vehicle within ten minutes and left alone in Target Vehicle 1.

20   Investigators last saw Target Vehicle 1 as it left the parking lot.

21      27.      Investigators followed the CHS to a pre-arranged meet location. The CHS

22   did not contact anyone prior to meeting Los or after leaving to meet investigators. The

23   CHS handed investigators a quantity of heroin he/she said was purchased from Los while

24   Los was in the CHS's vehicle. Investigators searched the CHS and the CHS's vehicle

25   again.  Both were found to be free of any money, contraband or narcotics. Investigators

26   packaged the suspected heroin after field-testing it with positive results. The heroin was

27   turned into Seattle Police Department evidence.

28

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 12
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Identification of Carrillo Lopez ("Los"), the Renton House, and
Background on the Target Vehicles**

28.     Investigators ran a Washington Department of License (DOL) records check on Target Vehicle 1 and found it was registered to "Hat Flags," LLC, 3221 Meadow Avenue North, Renton, Washington (the Renton house).  Investigators ran a DOL check for individuals with an identification or license registered to that residence. Investigators found that Carlos Carrillo Lopez was registered to the Renton address. Investigators obtained Carrillo Lopez's DOL photograph and identified him as the person investigators saw the CHS meet. The CHS was also shown the DOL photograph of Carrillo Lopez and identified him as the person the CHS knew as "Los."

29.     The next day, investigators conducted surveillance at the Renton house and saw Target Vehicle 2 (the blue Ford Explorer), parked at the residence, confirming information the CHS had previously provided. Target Vehicle 2 was registered to a person named "Genaro Carrillo Contreras" at the Renton house address.

30.     I spoke with the CHS a few days after the first controlled purchase. The CHS reported that Carrillo Lopez had told the CHS that he (Carrillo Lopez) had problems with his girlfriend at the Renton house and therefore had recently moved to the Federal Way area. Carrillo Lopez told the CHS he was staying with "his people."

**Controlled Buy #2
Use of TT1 and Target Vehicle 1
Identification of the Federal Way House**

31.     In late November 2019, I met with the CHS for the purpose of making a second controlled narcotics purchase per the above-describe procedure. The CHS told investigators that Carrillo Lopez recently provided another phone number, (206) 617-2910 (Target Telephone 1). I directed the CHS to contact Carrillo Lopez at that number to arrange the purchase of a quantity of heroin from him, while investigators monitored the call by listening to the conversation. Carrillo Lopez agreed to sell heroin to the CHS and told the CHS to meet at a specific location in the Federal Way area.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     Investigators searched the CHS and the CHS's vehicle in accordance with the procedure described above. Both were found to be free of money, contraband or narcotics. Investigators gave the CHS a quantity of pre-recorded buy money and instructed the CHS to drive directly to the meet location without contacting anyone else. The CHS was directed to use the money to purchase the heroin from Carrillo Lopez.

33.     Investigators followed the CHS to the meet location. The CHS parked his/her vehicle and waited in it with no contact from anyone else. Within a few minutes, investigators saw Target Vehicle 1 park near the CHS. Carrillo Lopez was the only occupant in Target Vehicle 1. Carrillo Lopez got out of the driver's seat and got into the passenger seat of the CHS's vehicle.

34.     Carrillo Lopez got out of the CHS's vehicle within a few minutes and left in Target Vehicle 1. Investigators followed him directly to 111 Southwest 305 Street, Federal Way, Washington (the Federal Way house). Carrillo Lopez parked Target Vehicle 1 in the driveway and walked to the front door and into the residence.

35.     Investigators followed the CHS to a pre-arranged meet location. The CHS did not have contact with anyone prior to meeting Carrillo Lopez or after leaving to meet investigators. The CHS handed investigators a quantity of heroin he/she said was purchased from Carrillo Lopez while Carrillo Lopez was in the CHS's vehicle. Investigators searched the CHS and the CHS's vehicle again. Both were found to be free of any money, contraband or narcotics. Investigators packaged the suspected heroin after field-testing it with positive results. The heroin was turned into Seattle Police Department evidence.

36.     Investigators watched the Federal Way house for the next two hours and did not see anyone leave or arrive at that location. I went to the residence early the next morning and saw Target Vehicle 1 was still in the driveway of the Federal Way house. I went by the Federal Way house several times, early mornings and late nights, over the next two weeks and frequently saw Target Vehicle 1 in the driveway, again indicating

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 14
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that Carrillo Lopez was residing there and this residence was involved with his narcotics trafficking activity.

37.     Within a few days of the second controlled purchase, the CHS reported to investigators that Carrillo Lopez told the CHS that he had a personal disagreement with "his people" at the Federal Way house and that he was moving back to the Renton house with his girlfriend.

### Controlled Buy #3
### Use of TT1 and Target Vehicle 2

38.     In December 2019, I met with the CHS for the purpose of making a third controlled narcotics purchase per the above standard operating procedure. I directed the CHS to contact Carrillo Lopez on TT1 to arrange a purchase of a quantity of heroin from him while investigators monitored the call by listening to the conversation. Carrillo Lopez agreed to sell the heroin to the CHS and told the CHS to meet at a specific location in the Federal Way area. Carrillo Lopez told the CHS he was waiting for his partner to get home and indicated his partner was his source of supply (SOS) for the drugs. Carrillo Lopez told the CHS that he would go pick up the heroin at his partner's house and bring it to the CHS as soon as his partner got home.

39.     As described above in the Standard Procedure for a Controlled Purchase section, investigators searched the CHS and the CHS's vehicle. Both were found to be free of any money, contraband or narcotics. Investigators gave the CHS a quantity of pre-recorded buy money and the CHS was instructed to drive directly to the meet location without contacting anyone else. The CHS was directed to use the money to purchase the heroin from Carrillo Lopez.

40.     Investigators followed the CHS to the meet location. The CHS parked his/her vehicle and waited in it with no contact from anyone else. Meanwhile, investigators conducted continuous surveillance at the Federal Way house while waiting for Carrillo Lopez to arrive.

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 15
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

41.     Approximately ten minutes later, investigators saw Target Vehicle 1 (the maroon Camry) park in the driveway of the Federal Way house. An unknown male got out of Target Vehicle 1 and went into the residence.

42.     The CHS told investigators that Carrillo Lopez just called him/her and said he was going to his "partner's" house to get the heroin and would be there shortly. A short time later, investigators saw Target Vehicle 2 (the blue Ford Explorer) park in the driveway. Carrillo Lopez got out of Target Vehicle 2 and went into the residence. Carrillo Lopez left the residence in Target Vehicle 2 a few minutes later.

43.     Investigators followed Carrillo Lopez directly to the meet location, where he parked near the CHS. Carrillo Lopez was the only occupant in Target Vehicle 2. Carrillo Lopez got out of the driver's seat of Target Vehicle 2 and got into the passenger seat of the CHS's vehicle. Carrillo Lopez got out of the CHS's vehicle within a few minutes and left in Target Vehicle 2. Investigators quickly lost sight of him due to traffic and other factors.

44.     After this interaction between the CHS and Carrillo Lopez, investigators followed the CHS to a pre-arranged meet location. The CHS did not have contact with anyone prior to meeting Carrillo Lopez or after leaving to meet investigators. The CHS handed investigators a quantity of heroin he/she said was purchased from Carrillo Lopez while Carrillo Lopez was in the CHS's vehicle.  Investigators searched the CHS and the CHS's vehicle again.  Both were found to be free of any money, contraband or narcotics.

45.     The CHS reported that during their encounter, Carrillo Lopez told him/her that he just picked up a large quantity of drugs from his "partner" and was ready any time to distribute more narcotics to the CHS. Based on that information, and the observation that Carrillo-Lopez had just gone to the Federal Way house immediately before meeting with the CHS, investigators believe the Federal Way house is a stash location and residence of the Source of Supply.

46.     Investigators went to the Renton house the morning after the third controlled purchase and saw Target Vehicle 2 (the blue Explorer) parked in front of the

residence, indicating that Carrillo Lopez was again residing at the Renton House and confirming what he told the CHS.

### Court-Authorized PRTT and Tracking Warrants
### for TT1, Target Vehicle 1 and Target Vehicle 2

47.     On December 16, 2019, the Honorable Brian Tsuchida, United States Magistrate Judge for the Western District of Washington, authorized a Pen Register/Trap and Trace Order for TT1 (Case No. PT-19-352).

48.     On December 19, 2019, the Honorable Michelle Peterson, United States Magistrate Judge for the Western District of Washington, authorized Tracking Warrants for TT1, Target Vehicle 1 and Target Vehicle 2 (Case No. GJ19-729).

49.     On December 27, 2019, investigators successfully attached a tracking device to Target Vehicle 2 at the Renton house.

50.     Target Vehicle 1 was consistently parked at the Federal Way House and investigators were unable to successfully attach a tracking device to that vehicle.

### Identification of Associates Involved in Illegal Possession
### of Firearms and Trafficking Controlled Substances

51.     In late December 2019, investigators in a separate law enforcement investigation involving felony firearms violations identified Carrillo Lopez as a person involved with their investigation. The investigation showed that Carrillo Lopez and an associate, Jaleel M. Hayes, brought several handguns and a semi-automatic rifle to a local shooting range in the Seattle area. I have seen video evidence of the two men shooting those firearms at the range and then leaving with the firearms. Hayes is a convicted felon prohibited under Washington State law from possessing firearms. Toll records from TT1 show that Carrillo Lopez and Hayes are in communication with each other.

52.     I also have probable cause to believe Carrillo Lopez is prohibited from possessing firearms under federal law. At the time of his arrest, Carillo Lopez was the respondent in an active Protection Order, restraining him from harassing, stalking, or

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 17
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

threatening an intimate partner. My review of court records revealed that this Protection Order was issued out of Renton, Washington on January 18, 2019, and personally served on Carrillo Lopez that same day. The order does not expire until January 18, 2021. The protected person in the Order is a woman with the initials, G.H. Carrillo Lopez and G.H. were in a relationship for over six years and have at least two children together. Based on my review of these records and this history, I believe probable cause exists to believe that Carillo-Lopez is prohibited from possessing firearms under 18 U.S.C. § 922(g)(8).

53.     Toll Records from TT1 also indicate Carrillo Lopez is in communication with another subject, Jaquel D. Demerson, who is also a convicted felon, prohibited from possessing firearms.

54.     An investigation into Demerson's social media has provided evidence of him possessing firearms and trafficking controlled substances (specifically, Xanax).

55.     Based on electronic surveillance from this investigation and the state investigation, GPS data from TT1, Target Vehicle 2 and the state investigation of Hayes and Demerson, investigators believe Carrillo Lopez frequently associates with Hayes at his residence and other locations.

### GPS Data from TT1 and Target Vehicle 2

56.     GPS data for TT1 and Target Vehicle 2 indicated that Carrillo Lopez primarily resided at the Renton house and regularly traveled to the Federal Way house during the course of this investigation and until search warrants were obtained.

### IV.     KNOWLEDGE OF DRUG TRAFFICKERS AND ELECTRONIC DEVICES, BASED ON TRAINING AND EXPERIENCE

57.     Based upon my training and experience, and my discussions with other experienced officers and agents involved in drug and firearms investigations, I know the following:

a.     Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records, including contact

names and numbers, photographs, and similar records. These items are often maintained in electronic form and kept in locations where drug traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes, vehicles, storage units, and businesses.

b.      Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization. Traffickers commonly maintain this information in books, papers, and on cellular telephones and other electronic devices, such as USB drives and laptop computers. Traffickers often maintain cellular telephones for ready access to their clientele and records regarding their drug trafficking. Traffickers often change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

c.      Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences, residences of family members or other trusted associates, and their vehicles. Drug traffickers sometimes take and often maintain photographs and/or video recordings of themselves, their associates, their property, and their illegal products, often maintaining these photographs and recordings in their electronic devices including cell phones.

d.      Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances, including travel records, in locations convenient to them, such as their residences, residences of family members and trusted associates, and vehicles.

f.      Traffickers often maintain records of their financial aspects of their operations (such as who owes them money, and to whom they owe money, expenditures, losses, and other financial records) in electronic form, including on computers and cell phones, and USB drives.

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 19
USAO #2019R01215

g.      Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale and, similarly, such drug traffickers will have an "inventory" which will fluctuate in size depending upon various factors to include the demand and supply for the product. I would expect the trafficker to keep records of his illegal activities for a period of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code, and are often maintained on cell phones or other electronic devices.

### Use of Cellular Telephones

58.     In addition to my general knowledge of drug trafficking, in this specific case, as summarized above, Carillo Lopez regularly used cellular telephones to communicate with the CHS to negotiate drug deals and to coordinate logistics for drug deals. Therefore, I believe this adds further probable cause to search the cellular phones seized in this case as instrumentalities of the crimes under investigation.

59.     Moreover, as noted above, drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can easily be carried to provide maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when needed. Since cellular phone use became widespread, every drug dealer I have contacted has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 20
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This evidence includes the following:

a.      The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts between this telephone and other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district (there was no wiretap in this specific investigation, but in my experience, targets in one drug investigation have often been found to have contact with targets of other drug investigations where wiretaps may have been used).

b.      The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user.  This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user.  Identifying a

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 21
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c.       Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

d.       Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs.

e.       Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify other members of the conspiracy and the drug trafficking organizaiton.

AFFIDAVIT OF FBI TASK FORCE OFFICER Edward Chan - 22
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## V.    CONCLUSION

2      60.      For the foregoing reasons, I believe probable cause exists to believe that the

3   electronic devices specified in this affidavit and in Attachment A contain evidence of the

4   crimes under investigation (set forth in Paragraph One), and I respectfully submit there is

5   probable cause to search the subject devices described in Paragraph Four (above), and in

6   Attachment A, for the evidence described in Attachment B.

7

8                                              TFO Edward Chan, Affiant

9                                              Federal Bureau of Investigation

10      The above-named agent provided a sworn statement attesting to the truth of the

11   contents of the foregoing affidavit on the  //   day of December 2020.

12

13

14                                              BRIAN A. TSUCHIDA

15                                              United States Chief Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF FBI TASK FORCE OFFICER EDWARD CHAN - 23
USAO #2019R01215

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## Attachment A

### Items to be Searched:

The following fourteen (14) electronic devices, which are currently in the Evidence Control Center of the FBI Seattle office, 1111 Third Avenue, Seattle, Washington. These items are in sealed evidence bags and have been labeled with the below-listed FBI Evidence numbers:

### Four (4) Items Recovered From 3221 Meadow Avenue North, Renton on January 16, 2020

    a.  **An AT&T ZTE cell phone**, serial number 329F7622A6E4 (Evidence number 1B162).

    b.  **A Blue Samsung Galaxy S7 cell phone**, serial number RF8HB0PLXOV (Evidence number 1B174).

    c.  **An AT&T LG Smartphone Model LM-X210APM, serial number 904VTNV064215** (Evidence number 1B163).

    d.  **An LG phone Model LG-H932 V30** (no serial number noted) (Evidence number 1B164).

### Ten (10) Items Recovered From 111 Southwest 305th Street, Federal Way on January 16, 2020

    a.  **One pink Samsung cell phone** (evidence item 1B62).

    b.  **One black LG cell phone** (evidence item 1B63).

    c.  **One black Alcatel cell phone** (evidence item 1B80).

    d.  **One black Alcatel cell phone,** with visible home button (evidence item 1B81).

    e.  **One blue cell phone,** IMEI 35748090188600 (evidence item 1B82).

    f.  **One black Alcatel cell phone** (evidence item 1B110).

    g.  **One HP laptop computer,** serial number 8CG9145PBJ (evidence item 1B114).

    h.  **One HP laptop computer**, serial number 5CB3524GY3 (evidence item 1B118).
        **One black Alcatel cell phone** with a cracked screen (evidence item 1B123).

    i.  **One USB drive** (evidence item 1B45).

## **Attachment B**

### **Items to be Searched for and Seized:**

This warrant authorizes the search for the following items in the electronic devices set forth in Attachment A:

Evidence, fruits, and/or instrumentalities of the commission of the following crimes: Distribution of, and possession with intent to distribute, controlled substances, in violation of 21 U.S.C. § 841(a)(1); conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846; use of a communications facility in furtherance of a felony drug offense, in violation of 21 U.S.C. § 843(b); money laundering, in violation of 18 U.S.C. § § 1956 and 1957; possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and unlawful possession of a firearm, and alien in possession of a firearm, in violation of 18 U.S.C. § 922(g).

       a.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

       b.     Stored list of recent received, sent, and missed calls;

       c.     Stored contact information;

       d.     Stored photographs of narcotics, cash or cash equivalents, firearms or other weapons, or related to the aforementioned crimes of investigation, or photographs that may show the user of the phone and/or co-conspirators, including any embedded GPS data associated with these photographs; and

       e.     Stored text messages related to narcotics, cash or cash equivalents, firearms, or other activity related to the aforementioned crimes of investigation, including but not limited to Facebook Messenger, Apple iMessages, Signal, WhatsApp, or other similar messaging services where the data is stored on the telephone.

## Attachment C

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. §§ 841, 843, 846 | Conspiracy to Distribute/ Possession of Controlled Substances |
| 18 U.S.C. § 1956 | Money Laundering |
| 18 U.S.C. § 922(g) and 924(c) | Firearm Offenses |